UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ANTHONY SAMPSON,

    Petitioner,

               CASE NO. 2:11-CV-15339
 v.             JUDGE DAVID M. LAWSON
               MAGISTRATE JUDGE PAUL J. KOMIVES

STEVEN RIVARD,

    Respondent.[1]

_____/


## REPORT AND RECOMMENDATION

*Table of Contents*

| | | | |
|---|---|---|---|
| I. | | RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 |
| II. | | REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 |
| | A. | *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 |
| | B. | *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3 |
| | C. | *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 5 |
| | D. | *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 8 |
| | | 1.   *Voluntariness of Plea* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 8 |
| | |    a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 8 |
| | |    b. Coercion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 10 |
| | |    c. Unfulfilled Promises . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 14 |
| | | 2.   *Ineffective Assistance of Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 17 |
| | |    a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 17 |
| | |    b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 19 |
| | F. | *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . . | 21 |
| | | 1.   *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 21 |
| | | 2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 22 |
| | G. | *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 23 |
| III. | | NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 23 |

---

[1] By Order entered this date, Steven Rivard has been substituted in place of Lloyd Rapelje as the proper respondent in this action.

I.      RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus and should deny petitioner a certificate of appealability.

II.     REPORT:

A.      *Procedural History*

        1.      Petitioner Anthony Sampson is a state prisoner, currently confined at the St. Louis Correctional Facility in St. Louis, Michigan.

        2.      On June 1, 2009, petitioner was convicted of second degree murder, MICH. COMP. LAWS § 750.317; armed robbery, MICH. COMP. LAWS § 750.529; second degree home invasion, MICH. COMP. LAWS § 750.110a(3); and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, pursuant to his plea in the Wayne County Circuit Court.   On September 9, 2009, he was sentenced to concurrent terms of 25-50 years' imprisonment on the murder conviction, 10-20 years' imprisonment on the armed robbery conviction, and 3-15 years' imprisonment on the home invasion conviction, all consecutive to a mandatory term of two years' imprisonment on the felony-firearm conviction.

        3.      Petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals, raising the following claims:

        I.      DEFENDANT-APPELLANT ANTHONY LANAR SAMPSON SHOULD BE ALLOWED TO WITHDRAW HIS PLEA AS IT WAS NOT KNOWINGLY AND VOLUNTARILY GIVEN DUE TO MISREPRESENTATIONS BY THE COURT, THE PROSECUTOR AND COUNSEL AS TO THE EFFECT OF HIS COOPERATION WITH THE PROSECUTOR AS WELL AS THE EFFECT OF TAKING HIS PLEA UNDER ADVISEMENT, UPON WHICH HIS PLEA AND SENTENCE AGREEMENT WAS BASED.

        II.     DEFENDANT-APPELLANT ANTHONY LANAR SAMPSON SHOULD BE ALLOWED TO WITHDRAW HIS PLEA AS HE DID NOT HAVE EFFECTIVE ASSISTANCE OF COUNSEL AT HIS PLEA OR

2

SENTENCING.

The court of appeals denied petitioner's application for leave to appeal in a standard order, for lack of merit in the grounds presented. *See People v. Sampson*, No. 299995 (Mich. Ct. App. Jan. 27, 2011).

4.      Petitioner sought leave to appeal these issues to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Sampson*, 489 Mich. 991, 800 N.W.2d 584 (2011).

5.      Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on December 6, 2011. As grounds for the writ of habeas corpus, he raises the two claims that he raised in the state courts.

6.      Respondent filed his answer on June 11, 2012. He contends that petitioner's claims are without merit.

7.      Petitioner filed a reply to respondent's answer on July 26, 2012.

B.      *Factual Background Underlying Petitioner's Conviction*

Petitioner was charged with first degree murder and other crimes in two separate cases. On the date set for trial, petitioner entered into a plea agreement whereby he would plead guilty to second degree home invasion with a sentence agreement of 3-15 years, second degree murder with a sentence agreement of 25-50 years, and armed robbery with a sentence agreement 10-20 years, with all sentences to be served concurrently. Petitioner also agreed to plead guilty to the felony-firearm charge, which carried a mandatory consecutive term of two years' imprisonment. The plea was also taken under advisement by the trial court, so that sentence could be imposed following disposition of a federal prosecution to allow the state sentences to run concurrently with any federal

sentence imposed.  In exchange, the prosecutor agreed to dismiss the remaining charges against petitioner.  *See* Plea Tr., at 9-12.  The trial court explained the effect of the plea being taken under advisement, *see id*. at 4-6, the potential sentences on each of the charges, *see id*. at 10-11, and the rights petitioner was waiving by pleading guilty, *see id*. at 12-13.  Petitioner denied that anyone had promised him anything other than what was placed on the record to induce his plea.  *See id*. at 13.  After establishing a factual basis for the plea, *see id*. at 14-18, the court took the plea under advisement.

Petitioner appeared for acceptance of the plea and sentencing on September 9, 2009, which was anticipated to be after petitioner had been sentenced in the federal case.  At that time, however, he had yet to be sentenced on the federal conviction.  Petitioner's counsel asked the court to delay the matter until after the next scheduled sentencing date in federal court, but the trial court denied this request because it was not confident that sentencing in the federal case would actually occur within any reasonable amount of time.  *See* Sentence Tr., at 4-5.  However, the court informed counsel and petitioner that if petitioner "felt that that was a miscarriage of justice because it could expose him in the federal system to consecutive as opposed to concurrent sentences, the Court would give the Defendant the right then to withdraw his plea."  *Id*. at 5.  The court explained to petitioner:

> Just so you are aware, the Court will when the Court sentences you officially, the Court will request that these matters run concurrent with the case in federal jurisdiction.
> You do understand, however, that the Court does not have authority over the federal jurisdiction, but the Court has authority over the system of this Court; you understand that?

*Id*. at 6.  Petitioner indicated that he understood and, after conferring with counsel, indicated that he desired to proceed.  *See id*. at 6-7.  After hearing from the parties, petitioner, and victims, the court sentenced petitioner in accordance with the plea agreement, and ordered the sentences to run,

4

as a state matter, concurrent with any federal sentence. *See id.* at 27-28.

In the federal case, according to this Court's docket, petitioner entered a plea in May 2009. His sentencing has been repeatedly adjourned at the request of the parties, and is currently set for April 18, 2013. *See United States v. Sampson*, No. 2:08-CR-20652 (E.D. Mich.) (Rosen, J.).

C.      *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam)

5

(quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409. As the Supreme Court has explained, the standard for relief under § 2254(d) "is difficult to meet, [and] that is because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). As the Court explained, "[s]ection 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id*. (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in the judgment)). Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786-87.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the

holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court

decision.'  In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing

legal principle or principles set forth by the Supreme Court at the time the state court renders its

decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529

U.S. at 412).  The relevant "clearly established law" is the law that existed at the time of the last

state court decision to issue a reasoned decision on the claim, *see Greene v. Fisher*, 132 S. Ct. 38,

44-45 (2011), and in evaluating the reasonableness of that decision a federal habeas court is limited

to the record that was before the state court at the time of its decision, *see Cullen v. Pinholster*, 131

S. Ct. 1388, 1398-99 (2011).

Although "clearly established Federal law as determined by the Supreme Court" is the

benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not

require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme

Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts

them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16.  Further, although the requirements

of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the

decisions of lower federal courts are useful in assessing the reasonableness of the state court's

resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v.

Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D.

Mich. 2002) (Tarnow, J.).[2]

---

[2]The deferential standard of review set forth in § 2254(d) applies even though the Michigan
Court of Appeals did not issue a reasoned decision.  As the Supreme Court has explained, an
unexplained summary order by a state court is presumed to be a rejection of the claims on the merits,
and the petitioner bears the burden of demonstrating that the rejection was on some basis other than
the merits.  *See Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011).  Here, there is no indication that the
Michigan Court of Appeals denied petitioner's application for leave to appeal on any basis other than

D.    *Analysis*

Petitioner raises a number of challenges to the validity of his plea.  Specifically, he contends that his plea was not voluntary because: (1) the agreement did not reflect the agreement he had previously made with the prosecution when he agreed to cooperate with the prosecutor; (2) the plea was coerced by the trial judge; and (3) the agreement that the plea would be taken under advisement until the disposition of his federal case was not honored.  Petitioner also contends that his attorney was ineffective for advising him to make a statement to the police and for advising him to enter the plea.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.    *Voluntariness of Plea*

a.  *Clearly Established Law*

A plea of guilty is valid if it is entered voluntarily and intelligently, as determined under the totality of the circumstances.  *See Brady v. United States*, 397 U.S. 742, 748-49 (1970); *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994).  The Constitution requires, for a plea to be valid, that the defendant be informed of all direct consequences of his plea.  *See Brady*, 397 U.S. at 755; *King*, 17 F.3d at 153.  A solemn declaration of guilt by the defendant carries a presumption of truthfulness.  *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Henderson v. Morgan*, 426 U.S. 637, 648 (1976).  "The subsequent presentation of conclusory allegations unsupported by specifics is subject to

_____

the merits.  On the contrary, the court of appeals explicitly stated that its denial was "for lack of merit in the grounds presented," and the Michigan Court of Appeals has repeatedly held a denial on this basis is "a determination on the merits of the case."  *Attorney Gen'l ex rel. Dep't of Treasury v. Great Lakes Real Estate Investment Trust*, 77 Mich. App. 1, 3, 257 N.W.2d 248, 249 (1977); *accord Hoye v. DMC/WSU*, No. 285780, 2010 WL 334833, at *1 (Mich. Ct. App. Jan. 28, 2010) (per curiam); *McCabe v. Miller & Assocs., L.L.P.*, No. 275498, 2007 WL 2935032, at *3 (Mich. Ct. App. Oct. 9, 2007) (per curiam); *People v. Douglas*, 122 Mich. App. 526, 530, 332 N.W.2d 521, 523 (1983).  Accordingly, the Michigan Court of Appeals's denial of petitioner's application for leave to appeal "for lack of merit in the grounds presented" constitutes an adjudication on the merits for purposes of § 2254(d).  *See Snyder v. Lafler*, No. 09-13773, 2011 WL 309056, at *3 (E.D. Mich. Jan. 27, 2011) (Roberts, J.).

summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74. Where the defendant "was fully aware of the likely consequences when he pleaded guilty[,] it is not unfair to expect him to live with those consequences[.]" *Mabry v. Johnson*, 467 U.S. 504, 511 (1984). Thus,

> [i]t is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked. It is also well settled that plea agreements are consistent with the requirements of voluntariness and intelligence--because each side may obtain advantages when a guilty plea is exchanged for sentencing concessions, the agreement is no less voluntary than any other bargained-for exchange.

*Id*. at 508 (footnotes omitted). Petitioner does not contend that he was coerced into pleading guilty or that the decision was not his own, nor could he given that he stated at the plea hearing that he had not been threatened or coerced into pleading guilty. *See Blackledge*, 431 U.S. at 74 ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."). As a number of Judges of this Court have observed:

> When a petitioner brings a federal habeas petition challenging his plea of guilty (or no contest), the state generally satisfies its burden by producing a transcript of the state court proceedings showing that the plea was made voluntarily. The factual findings of a state court that the guilty plea was properly made are generally accorded a presumption of correctness. Petitioner must overcome a heavy burden if the federal court is to overturn these findings by the state court. . . . Additionally, a habeas petitioner bears a heavy burden of rebutting the presumption that his or her guilty plea, as evidenced by the plea colloquy, is valid.

*Shanks v. Wolfenbarger*, 387 F. Supp. 2d 740, 749 (E.D. Mich. 2005) (Gadola, J.) (citations omitted); *accord Thirkield v. Pitcher*, 199 F. Supp. 2d 637, 651-52 (E.D. Mich. 2002) (Friedman, J.); *Hastings v. Yukins*, 194 F. Supp. 2d 659, 669 (E.D. Mich. 2002) (Cleland, J.); *Holtgreive v.*

*Curtis*, 174 F. Supp. 2d 572, 586 (E.D. Mich. 2001) (Hood, J.); *Myers v. Straub*, 159 F. Supp. 2d

621, 626 (E.D. Mich.2001) (Steeh, J.). In short where, as here, "the court has scrupulously followed

the required procedure, the defendant is bound by his statements in response to that court's inquiry."

*Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999) (internal quotation omitted).

### b. Coercion

Petitioner contends that his plea was coerced by the trial judge. On the day scheduled for

trial, the parties informed the court that although they had previously worked out a plea agreement,

petitioner wished to proceed to trial, resulting in the following exchange:

> THE COURT:   Let me just be clear to you, young man. I'm not sure what courtroom you believe you're in. But as I said to your attorney we – this Court has been more than willing to try to work with all parties and why is that, Mr. Sampson. Do you honestly think it's because the Court doesn't want to try a case.
>
> THE DEFENDANT:  No.
>
> THE COURT:   Of course not. It's because your attorney – and I submit you have two of the finest attorneys here, is trying to work out an agreement with the prosecutor to save you from getting life in prison without the possibility of parole if you were ultimately convicted on homicide murder in the 1st degree. The probability of that happening is pretty significant, and based on what they have said to this Court, and all it look[s] like the effort that has been utilized is that shall it – on the letter that was dated May 11th, 2009, there are several options and it looks like the prosecutor has offered murder in the second degree which does carry a maximum penalty of life in prison, but Count 1 will be 25 to 50 years, Count 3 would be ten to 20 years which is armed robbery. And Count 4 is the felony firearm which is a two-year consecutive, and that of course would run concurrent with Case No. 08-6788, which is your home invasion second degree. And at the time of the sentencing the People would dismiss Count 2 and Count 4.
>
> In conjunction with that agreement apparently has been a plea that has been entered into by you which the U.S.

10

District Court Eastern District of Michigan, and whereby there apparently is a mandatory minimum of 35 years on at least one of the cases. Is that correct?

MR. MORREALE:    Yes.

THE COURT:    Am I stating properly at least what was conveyed to this Court. And the prosecutor would make a recommendation to this Court to run your cases, these cases, the sentence of these cases concurrent with the federal case.

Now, the concern is, it's quite – I can understand why you and your attorney would be concerned because the federal system operates differently than the state system. You don't technically have a conviction on the state until you're officially sentenced. However, in the federal sentence once you plead guilty to a case, even in a state system it would be considered a conviction for the purposes of guidelines in the federal system. And a way around that is if the Court takes the plea under advisement. That is you tender your plea today, it's taken under advisement, the sentence stayed until such time as you're officially sentenced on the federal case and this sentence on the state case would run concurrent to that of the federal with the exception of the federal because that always runs consecutive. That's what they are willing to ask this Court to do.

Now, let me just say this. This Court is almost – this Court almost never take[s] cases under advisement because I'm of the mind set that you did it you accept responsibility, you do your time, that's it. That's how I am. I'm very pragmatic so-to-speak. On the other hand, I'm also mindful that the system in the federal Court system is different and can sometimes be harsher on individuals who you're facing charges in a criminal state court, and a way to get around that is to take it under advisement. I understand the wisdom. I certainly understand the request being made by your attorneys. It's not by the prosecutor, it's by your attorneys. They are trying to protect you. And for whatever reason something has gotten into your head to suggest that perhaps this isn't the best course for you to follow.

Now, if you believe your [sic] an innocent young man, and you believe you didn't do this crime, then by all means don't take this plea and let's go to trial. If you, however, have a different mind set this is about as good as an offer as you're going to get under the circumstances which were

11

seriously against you.  That's this Court's philosophy.

I don't have a problem trying this case.  Young man, we just finished one trial, we're on to the next one.  I mean that's how this business works.  I truly don't want anybody in this Court to take a plea or to tender a plea to this Court when he believes he's innocent.

If that is not, however, the status or mind set that you have and you have, however, decided or elected to listen to somebody other than your counsel, you will want to think twice before you say to this Court I want to go to trial.

* * * *

MR. MORREALE:      Your Honor, I think he's prepared to offer a plea.
. . . .  Your Honor, he just indicated to me he'd like to avail himself of the plea under advertisement [sic].

THE COURT:         You had an opportunity to discuss that?

MR. MORREALE:      He understands.

THE COURT:         Did you understand your attorney?

THE DEFENDANT: Yes.

THE COURT:         And you know against this is not a tactic by this Court to force you or coerce you into pleading; you understand that, sir?

THE DEFENDANT: Yes.

THE COURT:         This is not an effort – that's not how this Court operates. This Court is very adamant about proceeding to this Court and going forward if a plea is not tendered.

Plea Tr., at 3-9.

At the plea hearing, petitioner indicated that he understood the agreement, the proceedings taking place in the courtroom, and the rights he was waiving those rights by pleading guilty. Petitioner also denied that any promises or threats had been made to induce his plea, and that he was pleading of his own free will.  He also indicated that the court was not attempting to force him into

pleading guilty. These statements "carry a strong presumption of verity." *Blackledge*, 431 U.S. at 74 ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."). The trial judge's comments to petitioner did not impermissibly coerce his guilty plea. The court merely explained its view of the likely consequences of electing to proceed to trial. The court made it clear that petitioner should not plead guilty if he believed himself to be innocent, and that the court was not attempting to force petitioner to plead guilty. Where, as here, a trial judge accurately explains to a defendant the risks of proceeding to trial while making it clear that it remains the defendant's choice whether to accept a plea deal, the judge's actions are not unduly coercive so as to render the resulting plea involuntary. *See United States v. Johnson*, 89 F.3d 778, 783 (11th Cir. 1996) (no coercion where trial judge "went out of her way to remind [defendant] repeatedly that he was free to make the choice" and the judge's comments amounted to a correct legal explanation of the risks of going to trial or pleading guilty); *Caudill v. Jago*, 747 F.2d 1046, 1052 (6th Cir. 1984) (a judge's "statements [which] may have raised some fear in [a defendant] is not enough, by itself, to conclude that his plea was involuntary."); *United States ex rel. McGrath v. La Vallee*, 348 F.2d 373, 377 (2d Cir. 1965) (trial judge's statement to defendant that if he were tried and convicted, could be imprisoned for the rest of his life, while a guilty plea might give him a chance to serve a shorter sentence, was not coercive); *Oyague v. Artuz*, 274 F. Supp. 2d 251, 258 (E.D.N.Y.2003) (guilty plea not coerced where petitioner alleged that in an off-the-record conversation, the trial court told petitioner that if he was convicted after trial "he would spend the rest of his life in prison because he would be facing a likely 65 years to life sentence. Assuming the conversation took place, there is no allegation that the trial court did

not believe that its statements were accurate or that the court was motivated by anything but a desire to fully inform petitioner of the consequences of going to trial."). Thus, the Michigan Court of Appeals's rejection of this claim was not unreasonable, and the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### c. Unfulfilled Promises

Petitioner contends that his plea was involuntary because it did not include more beneficial terms. Petitioner contends that he expected to receive consideration for his cooperation with the police and prosecutor, yet the plea which he ultimately entered was the same as a plea agreement he was offered prior to his cooperation. He also contends that his plea was involuntary because the trial court did not abide by the agreement to take the plea under advisement until the disposition of the federal case. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

In *Santobello v. New York*, 404 U.S. 257 (1971), the Supreme Court held that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id*. at 262. The Court has subsequently clarified this language, holding that *Santobello* does not apply to every rescinded government promise. Rather, it applies only to those promises that induce a defendant to plead guilty. *See Mabry v. Johnson*, 467 U.S. 504, 507-08, 510 (1984). As the Seventh Circuit has explained, "[t]he *Santobello* Court did not hold that the government must fulfill every agreement or offer it makes. Rather, as we have consistently recognized, the Court was concerned with enforcing governmental promises that had induced the defendant to plead guilty." *United States v. Traynoff*, 53 F.3d 168, 170-71 (7th Cir. 1995). With respect to his cooperation, petitioner contends only that

14

counsel advised him that cooperation would result in a reduced sentence. He does not contend that any actual cooperation agreement between he and the prosecutor existed. Further, even if there was such a cooperation agreement, petitioner cannot contend that the alleged promise induced him to plead guilty. Petitioner's cooperation had apparently already occurred by the time of the plea. Despite this cooperation, petitioner knowingly and voluntarily pleaded guilty to those charges. Thus, the alleged cooperation agreement could have in no way induced him to plead guilty to the charges. "[U]nlike *Santobello*, who pleaded guilty thinking he had bargained for a specific prosecutorial sentencing recommendation which was not ultimately made, at the time petitioner pleaded guilty he knew the [terms pursuant to which he was pleading guilty]. . . . [Thus, his] plea was thus in no sense the product of governmental deception; it rested on no 'unfulfilled promise' and fully satisfied the test for voluntariness and intelligence." *Mabry*, 467 U.S. at 510. Nor does petitioner allege that the cooperation agreement induce him to give up any other constitutional rights he may have had. *See United States v. Streebing*, 987 F.2d 368, 373 (6th Cir. 1993) (breach of agent's cooperation agreement which promised dismissal of charges did not warrant relief where defendant did not detrimentally rely on the promise).

With respect to the trial court's failure to continue to take the plea under advisement until petitioner's sentencing in this Court, there is no question that the plea being taken under advisement was a material term of the agreement that induced petitioner to enter his plea under *Santobello*.[3] Petitioner cannot establish a *Santobello* violation, however, because the trial court gave him the opportunity to withdraw his plea. Under *Santobello*, the appropriate remedy for the government's

---

[3]Although petitioner phrases his claim as an argument that the plea was involuntary, the Supreme Court has explained that a prosecutor's breach of the terms of a plea agreement does not retroactively cause the defendant's guilty plea, when it was entered, to have been unknowing or involuntary. *See Puckett v. United States.*, 556 U.S. 129, 137-38 (2009).

breach of a plea agreement is either specific performance of the agreement or an opportunity to withdraw the plea. *See Santobello*, 404 U.S. at 263. The appropriate remedy is within the trial court's discretion, *see Santobello*, 404 U.S. at 263; *United States v. Bradstreet*, 207 F.3d 76, 80 (1st Cir. 2000); *Peavy v. United States*, 31 F.3d 1341, 1346 (6th Cir. 1994), and the Constitution does not require specific performance, *see Mabry*, 467 U.S. at 510 n.11; *Fields v. Attorney General of State of Md.*, 956 F.2d 1290, 1300 (4th Cir. 1992). Here, at sentencing, the trial court indicated that if petitioner "felt that [accepting the plea and imposing sentence] was a miscarriage of justice because it could expose him in the federal system to consecutive as opposed to concurrent sentences, the Court would give [petitioner] the right then to withdraw his plea." Sentence Tr., at 5. "[A]fter great lengthy discussions with" petitioner, counsel "advised th[e] Court that [it] is not the intent or the wishes of [petitioner] to withdraw his plea at this time." *Id*. at 5-6. Thus, by affording petitioner the opportunity to withdraw his plea, the trial court cured any *Santobello* violation, and petitioner's due process rights were not violated when the trial court proceeded to accept his plea and impose sentence after petitioner indicated that he did not wish to withdraw his plea. *See Porter v. Trombley*, No. 2:07-CV-11782, 2009 WL 1406480, at *4 (E.D. Mich. May 19, 2009) (Steeh, J.); *Deboue v. Girdich*, No. 04-CV-0119, 2005 WL 1377949, at *3 (E.D.N.Y. June 9, 2005); *cf. Tyler v. Ryan*, No. CV 10-353, 2012 WL 1313085, at *9 (Mar. 6, 2012) ("*Santobello* did not address the situation in which a defendant, aware of his rights, waives any objection to the state's breach of a plea agreement; thus, Petitioner has not identified any clearly established Supreme Court precedent supporting his claims."), *magistrate judge's report and recommendation adopted*, 2012 WL 1313189 (D. Ariz. Apr. 17, 2012). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

16

2.    *Ineffective Assistance of Counsel*

Petitioner also contends that his plea was involuntary due to the ineffective assistance of his trial counsel. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

a.  *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *Id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*. at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would

17

have had a reasonable doubt respecting guilt." *Id*. at 695.  It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim.  *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

As the Supreme Court has recently explained, *Strickland* establishes a high burden that is difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review a state court's application of *Strickland*:

> "Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id*., at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.
>
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id*., at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ----, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ----, 129 S.Ct. at 1420 . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

The Sixth Amendment right to counsel extends to the plea bargaining process, and thus "[d]uring plea negotiations defendants are 'entitled to the effective assistance of competent counsel.'" *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)) "'[T]he two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel.'" *Id.* (quoting *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)); *see also*, *Missouri v. Frye*, 132 U.S. 1399, 1406 (2012). However, the *Strickland* standard is particularly rigorous in the plea bargaining context. Because "[p]lea bargains are the result of complex negotiations suffused with uncertainty . . . [in which] defense attorneys must make careful strategic choices in balancing opportunities and risks," "strict adherence to the *Strickland* standard [is] all the more essential when reviewing the choices an attorney made at the plea bargain stage." *Premo v. Moore*, 131 S. Ct. 733, 741 (2011). Further, to demonstrate prejudice as a result of counsel's performance with respect to the entry of a guilty plea, petitioner must "demonstrate 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Id.* at 743 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

### b. Analysis

Petitioner contends that counsel was ineffective for advising him to cooperate with the police and to enter the plea. Contrary to petitioner's argument, however, it appears that petitioner's cooperation with the police and prosecution did, in fact, inure to his benefit. Petitioner faced numerous charges stemming from two separate criminal episodes, most notably a charge of first degree murder. Under Michigan law, this charge carried a mandatory sentence of life imprisonment without possibility of parole. *See* MICH. COMP. LAWS § 750.316. Counsel, through petitioner's cooperation with the police and bargaining with the prosecutor, was able to secure a plea deal which

19

resulted in dismissal of this charge, and a sentence agreement of 25-50 years on the second degree murder charge, which itself carried a potential sentence of life imprisonment. Counsel was also able to secure the prosecutor's and the court's agreement that all sentences would be served concurrent with each other and with any federal sentence imposed in petitioner's federal criminal case. In light of counsel's success in securing a favorable plea agreement, petitioner cannot show that counsel's advice to him amounted to deficient performance.

Nor can petitioner demonstrate a reasonable probability that, but for counsel's advice, he would have rejected the plea offer and proceeded to trial. Petitioner contends that by cooperating with the prosecution, he made incriminating statements that could have been used against him at trial, and that because an eyewitness had incorrectly identified the shooter at a line-up, he could have impeached her identification of him as the other participant in the robbery. Absent both his statements to the police and the victim's identification, petitioner argues, he would have proceeded to trial because the prosecution would have had no evidence against him. This argument is without merit. First, notwithstanding her mistaken identification of the shooter, the eyewitness identified petitioner as the second participant both at a line-up and at the preliminary examination. *See* Prelim. Exam. Tr., at 30-32. Even if her incorrect identification of the shooter would have been admissible to impeach her identification of petitioner, a jury still would have been free to accept her identification testimony. Second, notwithstanding any problems with the eyewitness's identification, the surviving victim of the robbery also identified petitioner as the second robber, *see id.* at 44, and her identification (which was in the purse taken from her by the second robber) was found in a bedroom believed to belong to petitioner, *see id.* at 10-11. The limited evidence presented at the preliminary examination alone provided significant evidence of petitioner's guilt,

20

apart from any additional evidence the prosecution would have marshaled for trial, including his participation in a number of other robberies.  In light of the evidence against him, the significant benefits of the plea agreement, and petitioner's decision not to withdraw the plea when given the opportunity to do so, petitioner cannot show a reasonably probability that, but for counsel's advice, he would have rejected the plea and insisted on going to trial.  Thus, the Michigan Court of Appeals's rejection of this claim was reasonable, and petitioner is not entitled to habeas relief.

F.      *Recommendation Regarding Certificate of Appealability*

1.      *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(1).  The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000).  Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue.  Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to

deserve encouragement to proceed further.'"" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999)

(quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893

n.4)); *accord Slack*, 529 U.S. at 483-84.  Although the substantive standard is the same, "[t]he new

Act does, however, require that certificates of appealability, unlike the former certificates of

probable cause, specify which issues are appealable."  *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C.

§ 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254

Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court

must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks § 2253(c)(3)'s requirement that any grant of a

certificate of appealability "state the specific issue or issues that satisfy the showing required by §

2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of

Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not

issue."  FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory

committee note, 2009 amendments.  In light of the new Rule 11 requirement that the Court either

grant or deny the certificate of appealability at the time of its final adverse order, I include a

recommendation regarding the certificate of appealability issue here.

2.    *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the

Court should also conclude that petitioner is not entitled to a certificate of appealability.  As

explained above, the record of the plea hearing shows that petitioner's plea was voluntarily and

knowingly entered, and that the trial court did not coerce his guilty plea.  The record also shows that,

although petitioner did not receive one of the benefits of the agreement (*e.g.*, holding the plea under advisement until the resolution of the federal case), once this became apparent petitioner was given the opportunity to withdraw his plea in accordance with *Santobello*. Thus, the resolution of petitioner's plea validity claims is not reasonably debatable. Likewise, the record shows that counsel was able to negotiate an extremely favorable agreement in light of the evidence against petitioner and the serious nature of the multiple charges against petitioner, and petitioner cannot show a reasonable probability that but for counsel's actions he would have insisted on going to trial. Thus, the resolution of petitioner's ineffective assistance of counsel claims is not reasonably debatable. Accordingly, the Court should deny petitioner a certificate of appealability.

G.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the

23

objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated:  April 12, 2013       S/Paul J. Komives

Paul J. Komives
United States District Judge

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 12, 2013, by electronic and/or ordinary mail.

S/Shawntel R. Jackson

Case Manager